UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| OMARI TAYLOR, | CASE NO. C18-5682 BHS |
|---|---|
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING PLAINTIFF LEAVE TO AMEND, AND DENYING PLAINTIFF'S MOTION TO STRIKE AS MOOT |
| v. | |
| JON VANGESEN and KITSAP COUNTY, | |
| Defendants. | |

This matter comes before the Court on Defendant Jon VanGesen's ("VanGesen") motion to dismiss, Dkt. 19, and Plaintiff Omari Taylor's ("Taylor") motion to strike exhibits attached to the motion to dismiss, Dkt. 24. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants in part and denies in part the motion for judgment on the pleadings and denies the motion to strike as moot for the reasons stated herein.

I. PROCEDURAL HISTORY

On August 20, 2018, Taylor filed a complaint against VanGesen and Defendant Kitsap County ("Kitsap County"). Dkt. 1. Against VanGesen, Taylor alleged deprivation

of his right to equal protection under the Fourteenth Amendment, deprivation of his right to be free from unreasonable search and seizure under the Fourth Amendment, and deprivation of his right to free speech under the First Amendment, all pursuant to 42 U.S.C. § 1983. Dkt. 1, ¶¶ 124–26. Against Kitsap County, Taylor alleged a violation of Washington's Criminal Records Privacy Act, RCW Chapter 10.97. *Id.* ¶ 127. On January 9, 2019, the Court entered the parties' stipulated dismissal of the Washington Criminal Records Privacy Act claim. Dkt. 14.

On May 24, 2019, VanGesen filed a motion to dismiss. Dkt. 19. On June 26, 2019, Taylor filed a motion to strike exhibits attached to the motion to dismiss. Dkt. 24. On July 1, 2019, Taylor responded to VanGesen's motion. Dkt. 25. On July 5, 2019, VanGesen replied to Taylor's response and responded to Taylor's motion to strike. Dkt. 26.[1]

## II. FACTUAL BACKGROUND

The facts relevant to the instant motion are as follows.

Taylor is an African-American man who resides in King County, Washington. Dkt. 1, ¶ 1. VanGesen is a white man who resides in Kitsap County and who is employed by the Kitsap County Sheriff's Department as a deputy sheriff. *Id.* ¶ 2; Dkt. 8, ¶ 2.

Taylor alleges that just before 7 p.m. on September 13, 2015, he was driving northbound on California Avenue Southeast in Port Orchard, Washington on the way to visit a friend. Dkt 1, ¶¶ 9–11, 40. VanGesen, driving an unmarked Sheriff's Office

---

[1] The reply brief is docketed as the reply of Kitsap County, but signed as VanGesen's reply. *Compare* Dkt. 26 as docketed in CM/ECF *with* Dkt. 26 at 11.

vehicle, passed Taylor going southbound. *Id.* ¶¶ 9–12. VanGesen looked directly at Taylor as the two cars passed each other. *Id.*

In his police report, VanGesen alleged that as he passed Taylor, he observed that the passenger side taillight on Taylor's vehicle was broken and "white light was coming through the lens." Dkt. 20 at 8; Dkt. 1, ¶ 20. Taylor alleges that while in fact a small piece was missing from the taillight cover, VanGesen could not have observed this as his vehicle passed Taylor's because: (1) the missing piece was sufficiently small that it was only visible from a distance of 20 feet, (2) the cars passed each other travelling approximately 30 to 35 mph such that one second after they passed they would have been 88 feet apart, and (3) Taylor did nothing to activate the taillight as VanGesen passed him (such as brake or signal a turn). Dkt. 1, ¶¶ 21–33.

VanGesen made a u-turn to follow Taylor. *Id.* ¶ 33. Taylor turned right from California Avenue Southeast onto East Van Buren Street and parked in the driveway at a friend's home. *Id.* ¶¶ 36–40. VanGesen stopped behind Taylor's parked car, turned on his emergency lights, and parked his car so that it blocked the driveway. *Id.* ¶¶ 41–46.

VanGesen then approached the driver's side of Taylor's vehicle. *Id.* ¶ 47. While VanGesen's report stated that Taylor "dropped his head," Taylor alleges this did not occur. Dkt. 20 at 8; Dkt. 1, ¶¶ 48–49. VanGesen told Taylor he had stopped him because his brake light was broken. Dkt. 1, ¶ 52. At some point, Taylor told VanGesen "we both know this isn't about the brake light," to which VanGesen did not respond. *Id.* ¶¶ 53–54.

VanGesen asked Taylor "if he lived there." *Id.* ¶ 55. When Taylor responded that he did not, VanGesen asked him where he lived. *Id.* ¶ 55–58. Taylor did not reply

because VanGesen was holding Taylor's driver's license which listed his address. *Id*. VanGesen asked Taylor how long he had been at the address on the license, to which Taylor did not respond, and asked what brought Taylor to Port Orchard as he did not live there. *Id*. ¶¶ 58–59. Taylor replied that he was visiting someone but did not reply when VanGesen asked him if that person lived in Unit A or Unit B. *Id*. ¶¶ 59–60.

VanGesen then ordered Taylor to get out of the car, walk to the back of the car, and take his hands out of his pockets. *Id*. ¶¶ 61–66. Taylor alleges that he complied with these instructions. *Id*. VanGesen instructed Taylor to put his hands on the trunk of the car, step back from the vehicle, and spread his feet to be patted down. *Id*. ¶¶ 67. While VanGesen's report claims that Taylor refused to spread his feet or move his hands along the trunk to be further from his waist, Taylor alleges he complied with VanGesen's request. Dkt. 20 at 8–9, Dkt. 1, ¶¶ 68–70. When VanGesen used his body to force Taylor closer to the trunk of the car, Taylor told VanGesen that his use of force was unwarranted. Dkt. 1, ¶¶ 72. VanGesen then radioed for a second unit. *Id*. ¶ 72.

Taylor alleges that VanGesen next shoved Taylor in the chest and put his hand on his gun, to which Taylor "again protested that any use of force was unnecessary." *Id*. ¶¶ 74–75. Taylor's friend, who had been observing the interaction from her home, called 911 to report that a law enforcement officer was yelling at her friend, was out of control, and asked the operator to "send someone quick before the situation got out of hand." *Id*. ¶¶ 76–77. Taylor's friend came outside and tried to ask VanGesen to leave Taylor alone, but VanGesen instructed her to go back inside. *Id*. ¶ 80. She complied and began filming the interaction through the front window, which VanGesen observed. *Id*. ¶¶ 81–83. When

Kitsap County deputy sheriff Fred Breed ("Breed") arrived on the scene, VanGesen arrested Taylor for obstructing an officer, handcuffed Taylor with Breed's assistance, and directed that Taylor be transported to jail. *Id*. ¶¶ 84–86.

Breed then interviewed Taylor's friend in her home, who told Breed that Taylor was coming over for dinner. *Id*. ¶¶ 88–89. When asked, Taylor's friend told Breed that Taylor did not use drugs or have any mental disorders. *Id*. ¶¶ 90–93. Breed asked the friend to show him the video she had taken of VanGesen and Taylor's interaction and watched part of it. *Id*. ¶¶ 94–98.

VanGesen searched Taylor's car and took photographs or directed other officers to take photographs. *Id*. ¶ 102. Taylor alleges that this was the first time VanGesen discovered that the taillight cover had a small piece missing. *Id*. VanGesen issued Taylor a citation for operating a motor vehicle with a defective tail lamp and operating a motor vehicle without insurance. *Id*. ¶¶ 103–104.

Taylor spent the night in a holding cell in the Kitsap County Jail and was released the next day after the Kitsap County Prosecuting Attorney's office declined to file criminal charges. *Id*. ¶¶ 105–106, 122. On October 14, 2015, Kitsap County charged Taylor with one count of obstructing a law enforcement officer based on the September 14, 2015 incident. Dkt. 20 at 5–6. On December 24, 2015, the Kitsap County District Court issued an Order of Release and Setting Court Dates on the charge. *Id.* at 12. On January 19, 2016, the charge was dismissed on Taylor's motion. Dkt. 25 at 4; Dkt. 8, ¶

19. The citation VanGesen had issued was dismissed after Taylor showed proof of insurance and proof that the tail light cover had been repaired. Dkt. 1, ¶ 123.[2]

### III. DISCUSSION

**A.     Taylor's Motion to Strike**

While Taylor asks the Court to strike the Declaration of John C. Purves submitted in support of VanGesen's motion to dismiss, he primarily contests whether the Court may take judicial notice of their contents. Dkt. 24. The declaration includes the criminal complaint Kitsap County filed against Taylor on October 14, 2015, charging him with one count of obstructing a law enforcement officer based on the September 13, 2015 incident (which includes VanGesen's incident report) and an Order of Release and Setting Court Dates from the Kitsap County District Court which Purves declares was issued after the District Court determined probable cause existed for the obstruction charge. *Id.*[3] The declaration includes a request that the Court take judicial notice of these documents as court records. Dkt. 20, ¶ 3.

"A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy

---

[2] In support of his motion, VanGesen submits the Declaration of John C. Purves, Dkt. 20. The declaration and its two supporting exhibits include the Kitsap County criminal complaint and the Kitsap County District Court Order of Release and Setting Court Dates. *Id.* The declaration is further addressed in the section on Taylor's motion to strike.

[3] While Taylor questions whether the incident report was actually part of the court record, Dkt. 24 at 2, VanGesen submitted another declaration from counsel in support of his reply affirming that the incident report was attached to the filed charging document and served as the statement of probable cause, Dkt. 27, ¶ 4. The Court finds no reason to doubt the veracity of this declaration and Taylor did not surreply.

cannot reasonably be questioned." Fed. R. Evid. 201(b). A court can take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The Court finds that Taylor is correct that the *existence* of these documents is subject to judicial notice as court records but the facts within them are disputed and not subject to judicial notice. Dkt. 24 at 3–5. Moreover, disputed facts are not considered evidence on a motion for judgment on the pleadings.

VanGesen argues that the Court should disregard the motion to strike because Local Rule 7(g) provides that requests to strike material shall not be presented in separate motions and shall be instead contained in the responsive brief. Dkt. 26 at 1 (citing Local Rules W.D. Wash. LCR 7(g)). While VanGesen correctly represents the local rule, the Court finds that his argument is moot because the Court would consider exhibits submitted in support of a motion under the standard for judicial notice with or without Taylor's motion.

Therefore, the Court denies the motion to strike as moot and will consider the relevant facts according to the legal standard for judicial notice.

**B.      Standard on Motion for Judgment on the Pleadings**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings are closed for purposes of Rule 12(c) once a complaint and answer have been filed. *Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to

a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**C.     Merits of Constitutional Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of constitutional or federal statutory rights proximately caused by a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1421 (9th Cir. 1991). The parties do not dispute that VanGesen acted under color of state law. Taylor alleges the traffic stop violated his Fourteenth and Fourth Amendment rights and alleges the arrest violated his First Amendment rights. Dkt. 1, ¶¶ 124–26.

VanGesen devotes the bulk of his motion to argument that Taylor has failed to plead facts sufficient to demonstrate any violation of his constitutional rights rather than

focusing on qualified immunity. Therefore, the Court will also focus its analysis on whether the facts alleged are sufficient to state a constitutional claim.

### 1. Equal Protection Under the Fourteenth Amendment

A plaintiff bringing an equal protection claim must show intentional discrimination based upon the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). "To succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citing *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). "To prevail on an equal protection claim under the 'Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 920 (9th Cir. 2012) (quoting *Rosenbaum v. City & Cty. of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007)). "In order to prove a discriminatory effect, 'the claimant must show that similarly situated individuals . . . were not prosecuted.'" *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

Taylor argues that plaintiffs in equal protection civil cases, unlike defendants in criminal cases alleging selective prosecution, do not have to allege or prove discriminatory effect. Dkt. 25 at 12. Taylor asks the Court to adopt the reasoning of the district court in *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1140 (N.D. Cal.

2000), which concluded that civil plaintiffs may properly state an equal protection claim based on a traffic stop without alleging discriminatory effect, i.e. without alleging similarly situated white motorists were not stopped. Dkt. 25 at 12. In *Rodriguez*, the district court found that showing similarly situated motorists were not stopped could be an impossible requirement because "[i]t is highly doubtful that Defendants or any other law enforcement agency maintain records identifying law-abiding individuals who are not stopped." *Rodriguez*, 89 F. Supp. 2d at 1141. The district court found that alleging that the defendants acted with discriminatory intent, that the defendants knew about but refused to stop racially discriminatory practices of their officers, and that statistical evidence and other facts existed which if proved would support an inference of discriminatory intent sufficiently stated an equal protection claim. *Id*.

The Court declines to excuse the requirement to allege discriminatory effect in this case for two reasons. First, the allegations the district court relied on in *Rodriguez* to find the complaint sufficiently stated a claim—discriminatory intent, knowledge of and refusal to stop discriminatory practices, and statistical evidence of discriminatory intent—could if proven also support a finding of discriminatory effect. *Id.* Second, Taylor does not cite other caselaw distinguishing between civil and criminal equal protection claims in this way, and the Ninth Circuit has more recently applied the discriminatory effect pleading requirement to civil plaintiffs despite noting its demanding standard. *See Lacey*, 693 F.3d at 920 (explaining that while proving discriminatory effect may be difficult, a plaintiff may state a claim by alleging only the existence of anecdotal or statistical facts).

The Court thus concludes that Taylor has failed to plead facts to support an element of his claim, and grants judgment on the pleadings as to Taylor's Fourteenth Amendment claim. Because it is not clear that Taylor's complaint may not be cured by amendment, the Court grants Taylor leave to amend.

**2.     Unreasonable Search and Seizure Under the Fourth Amendment**

"An officer may not detain a motorist without a showing of reasonable suspicion, which is 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Jimenez-Medina*, 173 F.3d 752, 754 (9th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 125 S. Ct. 1609, 1614 (2015).

It is undisputed that VanGesen told Taylor the reason for the traffic stop was a broken taillight and that the taillight was in fact broken. Taylor alleges VanGesen did not discover the taillight was broken until well after VanGesen initiated the stop—specifically, not until VanGesen searched the car after he arrested Taylor. Dkt. 1, ⁋ 102. The parties dispute whether this allegation is plausible.

VanGesen argues that Taylor submits only conclusory allegations and statements of opinion in support of his allegation. Dkt. 19 at 7. Taylor alleges the following facts in support of his contention that VanGesen could not have observed the taillight at the time VanGesen contends that he did: (1) the vehicles were travelling in opposite directions, (2) when the vehicles passed, it was still daylight and the sun would not set for at least another twenty-four minutes, (3) each vehicle was travelling approximately 30 to 35 mph,

(4) in daylight without activating the brake light, the missing piece of the cover would not be visible "unless a person was closer than 20 feet and had more than a faction of a section [sic] to look at the rear of the Taylor car." Dkt. 25 at 13; Dkt. 1, ¶¶ 9–11, 29–30, 34.

These facts create a plausible inference that VanGesen did not observe the missing piece of the taillight until after the stop and thus executed a traffic stop without reasonable suspicion. Therefore, the Court denies VanGesen's motion as to Taylor's Fourth Amendment claim.

### 3. Free Speech Under the First Amendment

The First Amendment generally "'prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). The retaliatory motive must be the but-for cause of the plaintiff's injury. *Id.* (citing *Hartman*, 547 U.S. at 260). When a plaintiff alleges retaliatory arrest, the absence of probable cause "generally provide[s] weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* at 1724. A plaintiff alleging retaliatory arrest must generally plead and prove the absence of probable cause but may alternatively "present objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1723–24, 1727.

Taylor argues that VanGesen had no probable cause to arrest him for obstruction because he complied with VanGesen's instructions to get out of the car, walk to the back,

and submit to a pat-down. Dkt. 25 at 17–18 (citing Dkt. 1, ¶¶ 61–70). Taylor alleges that he was arrested only after he implied that the stop was based on race through his statement that "we both know this isn't about the brake light," and for twice objecting to VanGesen's excessive use of force. In his motion, VanGesen argues the only way to interpret Taylor's pled facts is to find probable cause existed and the arrest was not based on Taylor's speech. Dkt. 19 at 8. The Court finds that as Taylor plausibly alleges he complied with VanGesen's instructions, Taylor has plausibly alleged that he was arrested without probable cause. Having plausibly alleged a lack of probable cause, actual causation of the arrest becomes a question of fact, and so Taylor has sufficiently alleged VanGesen arrested him based on protected speech.

Therefore, the Court denies VanGesen's motion on Taylor's First Amendment claim.

**D. Qualified Immunity**

"Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under qualified immunity, a public official is protected from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It protects "all but the

plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quotation marks omitted). Accordingly, to adequately plead a claim against such government officials, plaintiffs bear the burden of pleading facts that demonstrate that a violation of a right that was clearly established at the time of the alleged misconduct. *See id.* The Supreme Court has repeatedly held that clearly established law may not be defined "at a high level of generality." *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018); *City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015). Instead, courts must look at the "particular context" at issue and determine the question within the "specific context" of the case. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

Regarding qualified immunity to Taylor's Fourteenth Amendment and Fourth Amendment claims, VanGesen argues that Taylor would have to prove "initiating a traffic stop for an equipment malfunction on a motor vehicle operated by a person of a different race" violates clearly-established rights. Dkt. 19 at 10. This clearly mischaracterizes Taylor's position. Taylor does not argue police may not stop motorists of another race for legitimate traffic infractions. Taylor alleges VanGesen had no reason to suspect he had committed a traffic infraction and instead stopped him based only on his race. Dkt. 1, ¶¶ 124–25. It appears that as alleged VanGesen's actions would violate the clearly-established right under the Fourteenth Amendment not to be stopped by police

based only on race, *see, e.g.*, *Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 542 (2002) (clearly established in 1992 that the Constitution prohibits racial targeting in law enforcement investigations), and the clearly-established right under the Fourth Amendment not to be seized without reasonable suspicion, *see, e.g.*, *Jimenez-Medina*, 173 F.3d at 754.

Regarding qualified immunity to Taylor's First Amendment claim, VanGesen argues that there was probable cause to arrest Taylor for obstructing an officer. Dkt. 19 at 10. However, that conclusion would require the Court to find that Taylor's position, that no probable cause existed, is implausible. Notwithstanding VanGesen's argument that the Kitsap County District Court found probable cause, the Court finds it is plausible that as alleged, Taylor complied with VanGesen's commands to the point that probable cause for arrest was not present and so Taylor was arrested on the basis of his protected speech. Arrest only on the basis of protected speech violates clearly established First Amendment rights. *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462–63 ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

Therefore, the Court finds that VanGesen has not shown he is entitled to qualified immunity.

## IV. ORDER

Therefore, it is hereby **ORDERED** that VanGesen's motion for judgment on the pleadings, Dkt. 19, is **GRANTED in part and DENIED in part**, Taylor's motion to

strike, Dkt. 24, is **DENIED as moot**, and Taylor is **GRANTED leave to amend** and shall file an amended complaint no later than October 18, 2019.

Dated this 8th day of October, 2019.

BENJAMIN H. SETTLE
United States District Judge