UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OMARI TAYLOR,<br><br>            Plaintiff,<br><br>    v.<br><br>JON VANGESEN, KITSAP COUNTY,<br><br>            Defendants. | CASE NO. C18-5682 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JON VANGESEN'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Jon VanGesen's motion for summary judgment. Dkt. 61. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I.   PROCEDURAL HISTORY**

On August 20, 2018, Plaintiff Omari Taylor filed a complaint against Defendants VanGesen and Kitsap County. Dkt. 1. Against VanGesen, Taylor alleges deprivation of his right to equal protection of the law under the Fourteenth Amendment, deprivation of his right to be free from unreasonable search and seizure under the Fourth Amendment,

ORDER - 1

1   and deprivation of his right to free speech under the First Amendment, all pursuant to 42

2   U.S.C. § 1983. Dkt. 58, ¶¶ 174–76.

3        On October 7, 2020, VanGesen moved for summary judgment. Dkt. 61. On

4   October 26, 2020, Taylor responded. Dkt. 65. On October 30, 2020, VanGesen replied.

5   Dkt. 69.

6        **II.   FACTUAL BACKGROUND**

7        This action arises out of a traffic stop of Taylor, an African American man, by

8   VanGesen, a White Kitsap County deputy sheriff. On September 13, 2015, at

9   approximately 7:00 p.m., Taylor was driving northbound on California Avenue in Port

10   Orchard, Washington on his way to visit a friend. VanGesen was parked facing

11   southbound on California Avenue in an unmarked Sheriff's Office vehicle. VanGesen

12   testified that he could not identify the driver's gender or race as Taylor's vehicle passed

13   but that he did observe a broken taillight. Taylor, on the other hand, testified that as he

14   passed VanGesen he observed that VanGesen was "looking directly at me" and that

15   VanGesen was a White male. Dkt. 66, Ex. B, Deposition of Omari Taylor ("Taylor

16   Dep."), at 113:13–19, 115:3–25.

17        It is undisputed that Taylor's taillight was cracked on September 13. However, the

18   parties dispute whether VanGesen actually detected it when Taylor's vehicle passed him.

19   Taylor testified that he obeyed California Avenue's 35 miles per hour speed limit and

20   declares that he did not apply his brakes or otherwise activate his taillights while he

21   passed VanGesen. Taylor provides photographs of the rear of his vehicle taken by his

22   retained private investigator and asserts that the photographs show that it would have

been impossible for VanGesen to detect the taillight as VanGesen described in his report and deposition testimony. *See* Dkt. 68, Ex. 2. VanGesen testified that he rotated as Taylor passed him and observed that Taylor's red taillight was broken and a "white light" was emanating from the crack.

After Taylor passed him, VanGesen made a U-Turn and followed Taylor to 7240 East Van Buren Street. He pulled his vehicle behind Taylor's parked car in the driveway and activated his emergency lights to effect a traffic stop. In his deposition, Taylor testified that when he passed VanGesen his "hackles were raised" and that VanGesen's look said "you don't belong here." Taylor Dep. at 117:7–13, 143:1–12. When Taylor saw the patrol vehicle behind him with its emergency lights on, he testified that he knew VanGesen was going to be trouble. *Id.* at 141:23–142:1. VanGesen testified that when he approached Taylor to discuss the infraction and to request his documents, Taylor immediately accused VanGesen of racial discrimination. Taylor purportedly told VanGesen, when told the reason for the stop and when asked for documents, "We both know that's not why you stopped me." Dkt. 62, Ex. A, Deposition of Jon VanGesen ("VanGesen Dep."), at 87:16–89:22.

Taylor asserts that after VanGesen's "mild" greeting, Taylor Dep. at 122:4–20, VanGesen began asking him about what he was doing in the neighborhood and where Taylor lived, *id.* at 126:7–19. At this time, Taylor testified that VanGesen's tone and line of questioning became "increasingly intrusive." *Id.* Taylor told VanGesen that he was visiting a friend but did not feel the importance of disclosing where he had lived as VanGesen was looking at Taylor's diver license. *Id.* VanGesen then ordered Taylor to

exit the vehicle. VanGesen stated that he asked Taylor to get out of the car to show him the broken taillight. Taylor also had groceries in the front seat of his car, and VanGesen testified another reason he ordered Taylor out of the car was because he did not want Taylor to have unmonitored access to the "debris." VanGesen Dep. at 111:3–15.

Taylor complied with VanGesen's order and stepped out of his vehicle. He asserts that he complied with all of VanGesen's commands throughout their interaction, but VanGesen's incident report stated that Taylor ignored commands to remove his hands from his pockets. VanGesen's report states that this repeated behavior caused VanGesen to believe that Taylor had a concealed weapon or contraband or that Taylor was going to assault him. In his deposition, VanGesen testified that he "had no idea what [Taylor] had in his pocket" but did not conclude that Taylor had either a weapon or drugs in his pockets. VanGesen Dep. at 145:13–148:5. Taylor testified that he did not put his hands in his pockets or recall VanGesen telling him to take his hands out of his pockets. Taylor Dep. at 128:1–5. After Taylor allegedly did not comply with VanGesen's orders to remove his hands from his pockets, VanGesen performed a pat down search. Taylor put his hands on the trunk to submit to a search, but events escalated quickly.

VanGesen's report claims that Taylor refused to spread his feet or move his hands along the trunk to be further from his waist. VanGesen then used his body to force Taylor closer to the trunk of the car, and Taylor told VanGesen that his use of force was unwarranted. VanGesen then radioed for a second unit. Taylor's friend, Heather Sinn, came outside her home after hearing a male voice yelling in her driveway, but VanGesen instructed her to go back inside. Sinn complied and then called 911 because VanGesen's

1   "tone of voice" made her feel that help was needed to deescalate the situation. Dkt. 66,

2   Ex. C, Deposition of Heather Sinn, at 12:1–15. Sinn perceived the situation between

3   VanGesen and Taylor as an "aggressive interaction" and began filming. *Id.* at 12:23–

4   13:18, 16:23–17:1. Taylor described being grabbed on the upper arm and shaken by

5   VanGesen and shoved backwards as VanGesen reached for his handgun. Taylor Depo. at

6   134:23–135:2. Kitsap County deputy sheriff Fred Breed then arrived on the scene, and

7   VanGesen arrested Taylor for obstructing an officer, handcuffed Taylor with Breed's

8   assistance, and directed that Taylor be transported to jail.

9         Taylor asserts that the September 13 interaction with VanGesen was racially

10   motivated. To support his theory, on August 4, 2016, Taylor made a public disclosure act

11   request to the Kitsap County Sheriff's Office ("KCSO") requesting copies of all motor

12   vehicle equipment citations issued by deputies of KCSO during the period from January

13   1 through September 30, 2015. KCSO produced thirty-one legibly signed citations, of

14   which nine were for violations of RCW 46.37.050—the statute Taylor was charged with

15   violating. Taylor provides a summary of those nine citations:

| Motorist/Race | Date/Time | Deputy | Tail/Lic. Pl. Light |
|---|---|---|---|
| Perleen Bode (W) | 2/28/15 at 3:26 a.m. | M. Simpson | License Plate Lamp |
| FNU Sandoval (W) | 3/20/15 at 2:45 a.m. | D. Meyer | License Plate Lamp |
| Frederick Naylor (B) | 6/2/15 at 1:17 a.m. | A. Rogers | License Plate |
| Shane Dallas (W) | 2/6/15 at 1:14 a.m. | Twomey | Tail Light |
| Sean Martin (W) | 7/20/15 at 10:37 p.m. | J. VanGesen | Tail Light |
| Chris Harrell (W) | 4/2/15 at 9:48 p.m. | D. Twomey | License Plate Lamp |
| Margo Sporleder (W) | 4/15/15 at 9:06 p.m. | J. Bell | Tail Light |
| Amy Tempia (W) | 9/25/15 at 9:04 p.m. | D. Smith | License Plate Lamp |
| Omari Taylor (B) | 9/13/15 at 6:56 p.m. | J. VanGesen | Tail Light |

1  Dkt. 65 at 8–9. Taylor contends that the only citation for violation of RCW 46.37.050
2  that was issued to a person driving during daylight hours was the citation issued here by
3  VanGesen to Taylor. Taylor claims that VanGesen's stop was racially motivated and has
4  thus brought his § 1983 claims for violation of his Fourteenth, Fourth, and First
5  Amendment rights.

## III.  DISCUSSION

VanGesen moves for summary judgment arguing that all of Taylor's claims are unsupported by admissible evidence and therefore he is entitled to judgment as a matter of law. In the alternative, VanGesen argues that he is entitled to qualified immunity.

### A.  Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.   Equal Protection Under the Fourteenth Amendment**

Taylor asserts that VanGesen deprived him of his Fourteenth Amendment right to equal protection of the law when VanGesen detained him because of his race. The Court interprets Taylor's Fourteenth Amendment claim to be a selective enforcement claim—a variant of a selective prosecution claim. *See United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018) ("Selective prosecution and selective enforcement claims are undoubtedly related . . . ."). VanGesen argues that he is entitled to summary judgment on Taylor's Fourteenth Amendment claims because Taylor fails to provide evidence that VanGesen's

decision to stop Taylor was motivated by race and because there is no evidence of discriminatory effect.

A plaintiff bringing an equal protection claim must show intentional discrimination based upon the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). "To succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citing *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). "To prevail on an equal protection claim under the 'Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose.'" *Lacey v. Maricopa Cty.*, 693 F.3d 896, 920 (9th Cir. 2012) (quoting *Rosenbaum v. City & Cty. of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007)). "In order to prove a discriminatory effect, 'the claimant must show that similarly situated individuals . . . were not prosecuted.'" *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). To avoid summary judgment, Taylor "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated." *Serrano*, 345 F.3d at 1082 (internal quotation omitted).

1.  Discriminatory Purpose

VanGesen argues that Taylor relies on unsupported assertions to establish discriminatory purpose. Taylor provides circumstantial evidence to support his argument that VanGesen effectuated the police stop and arrest at least in part because of Taylor's protected racial status. Though VanGesen testified that he did not observe Taylor's race as Taylor's vehicle passed, viewing the evidence in the light most favorable to Taylor, Taylor has established disputes of material facts as to whether race was a motivating factor. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977).

Taylor provides photographs of his vehicle that show the cracked taillight, and a jury could reasonably conclude upon viewing the photos that VanGesen could not have seen the equipment defect prior to pulling Taylor over.[1] Additionally, Taylor and VanGesen's deposition testimonies are at odds about whether VanGesen observed Taylor's race prior to the stop; Taylor testified that VanGesen was "looking directly at me" as his vehicle passed, but VanGesen testified that he did not observe Taylor's race because he was looking at the vehicle's equipment. Taylor provides other circumstantial

---

[1] In his reply, VanGesen objects to and moves to strike portions of Rosemarie Winquist's declaration. *See* Dkt. 69 at 1–4. Taylor hired Winquist to take pictures of Taylor's vehicle as it appeared on September 13, Dkt. 65 at 4, and Taylor offers Winquist's lay opinion testimony as evidence that "it would not be human[ly] possible for anyone to have seen the crack in the right rear taillight" and that "any person with normal vision would have been able to see that the driver of the Ford Taurus was African-American." Dkt. 68, Winquist Decl., ¶¶ 25–26. VanGesen moves to strike this portion of the declaration, arguing that Winquist's opinion testimony is actually expert testimony or, in the alternative if Winquist is not an expert witness, that her opinion fails to qualify as lay opinion under Fed. R. Evid. 701. The Court does not rely on the objected to portions of Winquist's declaration to reach its decision here, and thus VanGesen's objections are moot.

evidence to support his assertion that VanGesen observed his race prior to the stop: neither VanGesen's windows nor Taylor's windows were tinted, Taylor observed that VanGesen was White, Taylor has a very dark complexion, and it was daylight when the stop occurred. Taylor also argues that Kitsap County's demographics[2] and VanGesen's inquiry into why Taylor was in the area may support an inference of discriminatory purpose that VanGesen only stopped Taylor because he was a Black man in a predominately White area. Based on this evidence, Taylor argues, a jury could reasonably conclude that VanGesen's decision to stop Taylor was racially motivated.[3]

The evidence that Taylor argues establishes discriminatory purpose is similar to that found in *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948–49 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010). In *Bingham*, a Black plaintiff brought an Equal Protection Claim against a White police officer and alleged that the officer initiated a traffic stop because of his race. *Id.* The plaintiff, like Taylor, presented circumstantial evidence to establish discriminatory purpose: the White officer was able to observe his race prior to the stop, the surrounding area was predominately White, and the officer never issued a

---

[2] The Court takes judicial notice, pursuant to Fed. R. Evid. 201, of the United States Census Bureau's estimate that Black or African American people make up only 3.2% of the Kitsap County population. *See* https://www.census.gov/quickfacts/fact/table/kitsapcountywashington/PST045219.

[3] Taylor also argues that this conclusion is further supported by national studies on the rates at which Black motorists are stopped compared to non-minorities. *See* Dkt. 66, Exs. E and F. VanGesen correctly identifies that Taylor has not disclosed any witnesses who could testify on these studies. Dkt. 69 at 10. The Court thus does not rely on the secondary sources provided by Taylor in reaching its conclusion.

ORDER - 10

citation. The Ninth Circuit affirmed the district court's grant of summary judgment, finding insufficient the plaintiff's argument that "because [plaintiff] is African–American, the officer is white, and they disagree about the reasonableness of the traffic stop, these circumstances are sufficient to raise an inference of racial discrimination." *Id.* at 948.

Taylor's evidence here is nearly identical to that in *Bingham*: a White police officer pulled over a Black driver in a predominately White area, and the driver stated that the officer could see his race prior to the stop. The Ninth Circuit has held that such evidence is insufficient to establish discriminatory purpose. Even though the Court assumes that the defective taillight was not reason for the stop, Taylor, like the plaintiff in *Bingham*, "does not provide any evidence to show that the real reason was his race." *Id.* at 953–54 (Reinhardt, C.J., concurring in part). Such additional evidence could include statistics or other evidence to show that the KCSO, or VanGesen in particular, had a practice of stopping Black drivers or that VanGesen made any race-related comment when making the stop. *See id.* But, because there is no evidence of discriminatory purpose, Taylor has not created a genuine issue of fact as to whether VanGesen violated the Equal Protection Clause.

        2.     <u>Discriminatory Effect</u>

But even if Taylor had established discriminatory purpose, he must also establish discriminatory effect. To establish discriminatory effect in the context of the instant claim, Taylor must show that similarly situated individuals who were not Black were not subject to being stopped and cited during daylight hours for a broken taillight. *See*

1 | *Armstrong*, 517 U.S. at 465. "A claimant can demonstrate discriminatory effect by

2 | naming a similarly situated individual who was not investigated or through the use of

3 | statistical or other evidence." *Farm Labor Org. Comm. v. Ohio State Highway* Patrol, 308

4 | F.3d 523, 534 (6th Cir. 2002). Taylor relies on the KCSO records during the period from

5 | January 1 through September 30, 2015 to establish discriminatory effect, arguing that the

6 | traffic infraction records demonstrate that similarly situated White drivers were not

7 | stopped and cited under the same circumstances in which he was stopped and cited. The

8 | KCSO records provided show that Taylor was the only driver who was stopped during

9 | daylight hours for a violation of RCW 46.37.050, which may support an inference that

10 | similarly situated White drivers were not subject to the offensive conduct here.

11 | However, the KSCO records only reflect ten months of driving citations and nine

12 | citations. The Supreme Court has considered statistical evidence in determining

13 | discriminatory effect, but the statistics reflected a greater sample size or period of time.

14 | For example, in *Yick Wo v. Hopkins*, the Supreme Court concluded that discriminatory

15 | effect had been proved through showing that all 200 applications by Chinese launderers

16 | were denied, while only 1 of 90 applications by White launderers was denied. 118 U.S.

17 | 356, 374 (1886). The records provided here are insufficient to raise a dispute of material

18 | fact as to discriminatory effect. If the KSCO records, for example, were more

19 | comprehensive and reflected a greater period of time or analyzed by an expert witness,

20 | the records could be significant or probative enough to create a dispute of material fact.

21 | *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. But, as the records are insufficient to

22 |

1 establish discriminatory effect, there is no dispute of material fact, and VanGesen's

2 motion is granted as to Taylor's Fourteenth Amendment claim.

3 **C.    Unreasonable Search and Seizure Under the Fourth Amendment**

4 Taylor additionally asserts that VanGesen deprived him of his Fourth Amendment

5 right to be free from unreasonable searches and seizures in two ways: by detaining him

6 without a reasonable basis for believing or suspecting that he had committed any traffic

7 infraction or crime and by conducting a pat down search of his person without any

8 reasonable basis for believing or suspecting that he was armed or in possession of illegal

9 substances. VanGesen's motion only addresses Taylor's Fourth Amendment

10 unreasonable detention claim, and therefore the Court considers only that claim.

11 VanGesen argues that there are no questions of material fact regarding VanGesen's

12 justification for the stop, entitling him to summary judgment.

13 "An officer may not detain a motorist without a showing of reasonable suspicion,

14 which is 'a particularized and objective basis for suspecting the particular person stopped

15 of criminal activity.'" *United States v. Jimenez-Medina*, 173 F.3d 752, 754 (9th Cir.

16 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "A seizure for a

17 traffic violation justifies a police investigation of that violation." *Rodriguez v. United*

18 *States*, 125 S. Ct. 1609, 1614 (2015).

19 VanGesen argues that the "*only* factual evidence regarding this issue is that

20 provided by defendant VanGesen" and that the evidence shows VanGesen was justified

21 in the stop. Dkt. 61 at 10 (emphasis in original). But VanGesen is incorrect. Taylor has

22 offered his own evidence to support his theory that VanGesen could not have seen

1 Taylor's broken taillight through his own testimony and photographs of Taylor's taillight. In essence, the parties dispute the material facts which led to VanGesen detaining Taylor. The Court agrees with Taylor that the issues are plainly disputed. A trier of fact, viewing the evidence in the light most favorable to Taylor, could find in Taylor's favor. Whether VanGesen saw Taylor's broken taillight and thus had a reasonable suspicion to detain Taylor is a factual question, and therefore VanGesen's motion is denied.

**D.  Free Speech Under the First Amendment**

Finally, Taylor asserts that VanGesen deprived him of his First Amendment right to free speech by arresting him, at least in part, because he exercised his rights to speak and expressed his belief that VanGesen had detained him solely because he was Black. VanGesen argues that any statement Taylor made about race was made after detention and that detention was unrelated related to speech.

The First Amendment generally "'prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). The retaliatory motive must be the but-for cause of the plaintiff's injury. *Id*. (citing *Hartman*, 547 U.S. at 260). When a plaintiff alleges retaliatory arrest, the absence of probable cause "generally provide[s] weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* at 1724. A plaintiff alleging retaliatory arrest must generally plead and prove the absence of probable cause but may alternatively "present objective evidence that he was arrested

when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 1723–24, 1727.

Similar to Taylor's Fourth Amendment claim, the parties dispute when Taylor's statement actually occurred. VanGesen asserts that Taylor made comments about being arrested because he is Black after he detained Taylor. And Taylor testified that he made a statement early in his encounter about racial discrimination, which VanGesen perceived as comments about race. The Court agrees with Taylor that, at the very least, there is a question of fact as to when Taylor made these particular comments and therefore whether VanGesen engaged in a retaliatory arrest. Issues of material fact persist in Taylor's First Amendment claim, and thus VanGesen's motion is denied.

**E.     Qualified Immunity**

VanGesen argues that even if a jury could find that he violated Taylor's constitutional rights, he is entitled to qualified immunity on all of Taylor's claims. "Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under qualified immunity, a public official is protected from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has repeatedly held that clearly established law may not be defined "at a high level of generality." *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018); *City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015). Instead, courts must look at the "particular context" at issue and determine the question within the "specific context" of the case. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

Taylor has established at this stage that his constitutional rights under the Fourth and First Amendments would have been violated on the facts alleged for the reasons discussed above. Although Taylor correctly notes that the Court previously concluded that Taylor's rights were clearly established, *see* Dkt. 31 at 14–15, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

VanGesen argues that he is entitled to qualified immunity for all of Taylor's § 1983 claims because a reasonable officer could have believed that their conduct was lawful. He argues that "there is nothing VanGesen could or reasonably should have known to lead him to conclude that pulling a vehicle over for a standard equipment violation on this day was somehow a constitutional violation." Dkt. 61 at 19. Under

VanGesen's theory, he is entitled to qualified immunity because a reasonable officer would have acted as he did in the situation. The Court can make this determination on summary judgment if the material facts are undisputed. *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996) (internal citation omitted). "If, however, there is a material dispute as to the facts and circumstances that an officer knew or should have known, or as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial." *Id.* at 1370; *see also Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) ("Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law."). Such is the case here. The parties have two theories of what happened on September 13 and what VanGesen observed prior to stopping Taylor. The question of whether a reasonable officer would have acted as VanGesen did is ultimately a question for the jury.

The many disputed material facts preclude a determination that VanGesen is entitled to qualified immunity as a matter of law. The Court therefore denies VanGesen's motion for summary judgment as to Taylor's First and Fourth Amendment claims.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Defendant VanGesen's motion for summary judgment, Dkt. 61, is **GRANTED** in part and **DENIED** in part.

Dated this 20th day of January, 2021.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge