Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

OMARI TAYLOR,

Plaintiff,

v.

JON VANGESEN and KITSAP COUNTY,

Defendants.

NO. 3:18-cv-05682-BHS

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT DISMISSAL OF FOURTEENTH AMENDMENT CLAIM

**NOTE ON MOTION CALENDAR: February 3, 2021**

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This litigation involves claims brought by Plaintiff Omari Taylor ("*Taylor*") against Defendants Jon VanGesen and Kitsap County ("*VanGesen*") pursuant to 42 U.S.C. § 1983, alleging deprivation of his right to equal protection of the law under the Fourteenth Amendment, deprivation of his right to be free from unreasonable search and seizure under the Fourth Amendment, and deprivation of his right to free speech under the First Amendment.

On January 20, 2021, this Court partially granted VanGesen's Motion for Summary Judgment—ruling that there are facts in the record sufficient to maintain Taylor's First and Fourth Amendment claims, but dismissing the Fourteenth Amendment claim based on Ninth Circuit precedent articulated in *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948–49

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT DISMISSAL OF FOURTEENTH AMENDMENT CLAIM – 1 (3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

(9th Cir. 2003), *overruled on other grounds by Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010). *Dkt*. 72. Critically, the Court stated in its Order that it "interprets Taylor's Fourteenth Amendment Claim to be a selective enforcement claim"[1] and concluded that the evidence presented by Taylor is "nearly identical to that in *Bingham*."[2] This demonstrates that the Court overlooked or misapprehended both the nature of Taylor's Fourteenth Amendment claim, and circumstantial indicia of discriminatory purpose in the record that go beyond the facts in *Bingham* that were insufficient to survive summary judgment. Pursuant to Fed. R. Civ. P. 54(b), Taylor respectfully requests that this Court reconsider and reverse that portion of its January 20, 2021 order which granted summary judgment dismissal of Taylor's Fourteenth Amendment claim. As required by LR 7(h)(2), Taylor identifies below the specific matters and evidence he believes was overlooked and/or misapprehended by the Order.[3]

## II.   ISSUES PRESENTFD

This motion presents the following issues for resolution by this Court:

1.      Did this Court err when it analyzed Taylor's equal protection claim as a selective prosecution claim?

2.      Did this Court overlook specific facts in the record which demonstrate that VanGesen acted intentionally and detained Taylor because of his race?

---

[1] *Dkt*. 72 at 7:15-20.

[2] *Id*. at 11:6-8.

[3] This motion is supported by the pleadings, declarations and exhibits filed in support of Plaintiff Omari Taylor's Opposition to Defendant Jon VanGesen's Motion for Summary Judgment (See *Dkt*. 65 (Opposition); *Dkt*. 66 (Johnson Decl.); *Dkt*. 67 (Taylor Decl.) and *Dkt*. 68 (Winquist Decl.)), and the pleadings and documents already filed in this matter.

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 2
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

### III.   AUTHORITY

**A.   Reconsideration under Rule 54(b).**

Rule 54(b) permits a court to revise or reconsider any order "that adjudicates fewer than all the claims….at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Kirby v. City of E. Wenatchee*, No. 12-CV-190-JLQ, 2013 WL 2396008, at *1 (E.D. Wash. May 31, 2013).  *Accord Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003).

Relief under Rule 54(b) may be entered "as justice requires." *Judicial Watch v. Dep't of Army,* 466 F. Supp. 2d 112, 123 (D.D.C.2006) "For guidance, the court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)." *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013). District courts, however, "have more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b)." *Cobell v. Norton,* 224 F.R.D. 266, 272 (D.D.C. 2004).

Accordingly, a "district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient[.]" *Abada v. Charles Schwab & Co.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000); *see also Wright v. Watkins & Shepard Trucking, Inc.*, 968 F. Supp. 2d 1092, 1096 (D. Nev. 2013); *Allison v. Dolich*, No. 3:14-CV-1005-AC, 2018 WL 747380, at *1 (D. Or. Feb. 7, 2018).

### IV.   ARGUMENT

**A.   The Order mistakenly views Taylor's Fourteenth Amendment claim as a "selective enforcement" claim.**

The Court's Order states, "The Court interprets Taylor's Fourteenth Amendment claim to be a selective enforcement claim—a variant of a selective prosecution claim." *Dkt*. 72 at 7:15-20 (citing *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018)).  But Taylor's claim is *not* a selective enforcement claim.  Selective enforcement claims, like selective prosecution claims, both rest on the assertion that the executive branch official actually perceived both white

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 3
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

and non-white individuals to be guilty of the same offense.  For example, in *United States v. Armstrong*, 517 U.S. 456 (1996) the defendant asserted that prosecutors *actually believed* that both white and nonwhite individuals, like Armstrong, were committing the crime of possession of cocaine with intent to distribute, but that they were choosing to prosecute only nonwhite individuals because they were nonwhite.  In the related context of law enforcement detentions, a claim of selective enforcement rests upon the assumption that a police officer *actually believed* that both white and nonwhite individuals were committing an offense (criminal, or, as in this case, a civil infraction), but that he was choosing to detain only the nonwhite individuals.

        In this case, Taylor is asserting that VanGesen *did not actually believe* that Taylor was committing a traffic infraction by driving with a cracked taillight.  Taylor is asserting that VanGesen did not have such a belief because *he never saw the crack in the taillight* until after he detained Taylor in Heather Sinn's driveway.  This Court has found that Taylor *has* presented evidence from which a jury *could* find that Taylor is correct and that VanGesen did not see the defect in the taillight.[4]  Thus, Taylor is *not asserting "selective" enforcement* of the vehicle equipment law.  Taylor is asserting pretextual enforcement of the law.  He is asserting that the cracked taillight was *not* any part of the motive for the stop.  Instead, he is asserting that Taylor was detained because (1) VanGesen saw that an African-American man was driving in an overwhelmingly white city, (2) some African-Americans sell illegal drugs, (3) VanGesen had prior experience with illegal drug trafficking in the same general neighborhood, (4) VanGesen mistakenly believed that Taylor had turned onto the street where VanGesen had previously made a drug arrest; (5) VanGesen doubted that Taylor had any friends living in the house where Sinn was living and challenged Taylor on that point, and (6) that VanGesen suspected that Taylor was there to sell drugs to someone in that house.  If a jury were to accept Taylor's

---

[4] In denying dismissal of Taylor's Fourth Amendment claim, the Court specifically ruled that Taylor has presented evidence, sufficient to survive summary judgment, to support his theory that VanGesen could not have seen Taylor's broken taillight.  *Dkt* 72. At 13:19-14:3 (stating that this issue is "plainly disputed").

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 4
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

explanation as to why he was detained, then Taylor would establish that his race was a motivating factor for his detention.

**B.      The fact that VanGesen never stopped any other driver, white or black, *in the daytime,* for a cracked taillight, supports Taylor's contention that VanGesen did not actually see the crack in Taylor's taillight.**

The evidence Taylor presented showed that VanGesen had never stopped anyone else for driving with a cracked taillight during daylight hours.  This evidence supports Taylor's contention that VanGesen never saw the crack in his taillight. Such a tiny crack would be very hard to see even if VanGesen were very close to the rear of the car and had sufficient time to make the observation.  The fact that the only driver VanGesen has ever detained for this equipment infraction during daylight hours is African-American was offered to show that VanGesen's contention that he detained Taylor for the taillight infraction was a pretext.  It was not offered to show "selective" enforcement.  One cannot select a car for detention for a cracked taillight if one never sees the broken taillight at all.

The misapprehension of Taylor's claim lead this Court to task Taylor with what is effectively an impossible burden of demonstrating or specifically identifying other drivers that VanGesen could have targeted for no reason but did not.  *See e.g. Sellers*, 906 F.3d at 853 (asking claimant in selective enforcement claim related to reverse-sting operations to prove who "could have been targeted…but was not….is asking him to prove a negative; there is simply no statistical record for a defendant to point to.").

**C.      This Court's reliance on *Bingham* is misplaced.  *Bingham* is not a selective enforcement case.**

This Court misinterprets Taylor's claim as one of "selective enforcement," and then relies on *Bingham* as support for the conclusion that Taylor has failed to produce sufficient evidence to create a genuine issue of fact for trial of that claim.  But *Bingham* is not a selective enforcement case.  Significantly, *nowhere* in the Bingham opinion does the Ninth Circuit use

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 5
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

either the phrase "selective enforcement" or "selective prosecution."  The officer who detained Bingham allegedly did so because he saw him weaving in his lane.  Bingham *never* conceded that he *was* weaving.  On the contrary, he flatly denied it.  Bingham never argued that although he was weaving, there were other lane-weaving drivers who were white whom the officer did not stop because he was choosing to "select" black lane-weavers for detention.

**D.**     **An Equal Protection claim may be based on a single racially discriminatory act. Proof of a pattern of such conduct is not required.**

Equal Protection claims brought in different contexts show that where—like under the present circumstances—the claimant bears a particularly arduous evidentiary burden, a prima facie showing of racial discrimination may be made by relying *solely* on the facts concerning the case at hand.  *See e.g.*, *Batson v. Kentucky*, 476 U.S. 79, 93 (1986) (challenging prosecution's use of peremptory strikes in jury selection).  This is a viable analytical framework that the Order did not consider when it interpreted Mr. Taylor's claim to be a selective prosecution claim.

Moreover, this approach is consistent with the well-settled proposition set forth in *Arlington Heights v. Metropolitan Housing Department Corp.,* that "a consistent pattern of official racial discrimination" is not "a necessary predicate to a violation of the Equal Protection Clause," and that even a single "invidiously discriminatory governmental act" may not be "immunized by the absence of such discrimination in the making of other comparable decisions."[5]  As a result of misapprehending the nature of Mr. Taylor's Fourteenth Amendment claim, the Court overlooked specific facts in this case (facts more fully articulated below)  that would allow "a reasonable trier of fact to find by a preponderance of the evidence that"

---

[5] 429 U.S. 252, 266 n. 14 (1977) (summarizing nonexhaustive list of subjects—all related to the particular circumstances of the case at hand—relevant to determining whether racially discriminatory intent was motivating factor in legislative action including "the specific sequence of events leading up to the challenged decisions," "[d]epartures from the normal procedural sequence," and "legislative or administrative history.").

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT DISMISSAL OF FOURTEENTH AMENDMENT CLAIM – 6 (3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

VanGesen's decision to target Taylor was racially motivated. *See, e.g., Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

### E. The Order overlooks evidence sufficient for a jury to find that VanGesen's acts were racially motivated.

In ruling that the present case is "nearly identical" to *Bingham*, the Order overlooks facts in the case that were simply not present in *Bingham*, and which are sufficient for a trier of fact to find that VanGesen targeted Taylor, at least in part because of his race. For this reason, *Bingham* is distinguishable. Bingham argued on appeal that in granting summary judgment dismissal of his Equal Protection claim, the district court disregarded four key facts:

> (1) That that the officer is white and Bingham is black; (2) that the officer was able to see Bingham's race before initiating the traffic stop; (3) that the City of Manhattan Beach is predominantly white; and (4) that no citation was issued for Bingham's "erratic driving," the officer's alleged reason for initiating the stop.

*Bingham*, 341 F.3d at 948. The Ninth Circuit summarized Bingham's position as arguing, essentially, that "because he is African–American, the officer is white, and they disagree about the reasonableness of the traffic stop, these circumstances are sufficient to raise an inference of racial discrimination." *Id.* Judge Reinhardt's concurring opinion goes further in explaining that Bingham did not provide *any* tangible evidence to show that the "real" reason for the traffic stop was his race. *Id.* at 954.

Thus, it is clear that *Bingham* and the many cases within the Ninth Circuit following its mandate stand for the proposition that "evidence that the plaintiff and the defendant are of a different race or ethnicity combined with a disagreement as to the reasonableness of the defendant's conduct toward the plaintiff is **alone** insufficient to show a violation of the Equal Protection Clause. *Loharsingh v. City & Cty. of San Francisco*, 696 F. Supp. 2d 1080, 1106 (N.D. Cal. 2010) (emphasis added) (citing *Bingham*, 341 F.3d at 949). But, contrary to the Order's conclusion, Taylor does not merely present evidence that "a White police officer pulled

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 7
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

over a Black driver in a predominately White area, and the driver stated that the officer could see his race prior to the stop." *Dkt.* 72 at 11:6-8.

In addition to the evidence that the Court ruled was sufficient for Taylor to proceed on his First and Fourth Amendment claims, Taylor also presented evidence that VanGesen almost immediately became "aggressively inquisitive"[6] asking Taylor about what he was doing in the neighborhood (which is predominantly White) and where Taylor lived—even though Taylor had already provided VanGesen his identification and informed VanGesen that he was at the residence to visit a friend.[7]  VanGesen's disbelief that Taylor had legitimate business in this predominantly White neighborhood was obvious enough that it prompted Mr. Taylor to quip that "he [VanGesen] was going to feel really stupid" when Heather Sinn came out of her home and revealed that Taylor was, in fact, at the residence to visit her for dinner.[8]  The Order also overlooks evidence supporting an inference that VanGesen believed Taylor was in the area to buy drugs.  VanGesen mistakenly believed that Mr. Taylor had turned right onto Patricia Street, a street which stuck out in VanGesen's mind because of a prior investigation and drug bust VanGesen had made in the area.[9]  Deputy Fred Breed also took a statement from Heather Sinn after the Incident and in doing so inquired as to whether Mr. Taylor used drugs.  However, at his deposition, Breed could not articulate or recall any circumstance about the Incident that led him to ask Ms. Sinn if she knew of Taylor having any drug use.[10]

These facts—in addition to Mr. Taylor's race, the demographics of the area, and the evidence supporting Taylor's Fourth Amendment claim—are strong circumstantial evidence supporting the inference that VanGesen's actions were racially motivated and based on

---

[6] Johnson Decl. ¶ 3, Ex. B (Taylor Dep.) at 122:4-5.

[7] Johnson Decl. ¶ 3, Ex. B (Taylor Dep.) at 121:18-126:19.

[8] See Johnson Decl. ¶ 3, Ex. B (Taylor Dep.) at 133:23-134:4; Johnson Decl. ¶ 4, Ex. C (Sinn Dep.) at 10:1-3 ("I heard Mr. Taylor say, "you're going to feel real stupid in a minute.""); and Omari Taylor Decl. ¶ 61.

[9] *See* Johnson Decl. ¶ 2, Ex. A (VanGesen Dep.) at 65:22-66:17.

[10] See Johnson Decl. ¶ 11, Ex. G (Breed Dep.) at 34:25-41:25.

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 8
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

VanGesen's assumption that a black man had no legitimate reason to be in a largely white neighborhood unless he was there to purchase drugs or commit some other crime. If Mr. Taylor cannot proceed on these facts, the Order effectively rules that an Equal Protection claim based on race discrimination cannot proceed absent evidence of some overt statement or confession of racial animus made by a defendant.

That VanGesen badgered Taylor about his reason for being in Port Orchard—a line of questioning that had no plausible connection to the garden variety traffic infraction VanGesen claims he was investigating—is precisely the type of circumstantial evidence that has been held sufficient to sustain a jury finding that a traffic stop was based on racial animus, and is therefore the type of "race related" comment that the Order erroneously concluded was missing from the record. *See Price v. Kramer*, 200 F.3d 1237, 1248 (9th Cir. 2000) (Fourth Amendment claim, but question of racial animus was at issue for purposes of awarding punitive damages). In *Price*, the Ninth Circuit held that the plaintiffs presented sufficient evidence at trial to support a conclusion of racial animus based in part on the nature of the officers' questioning of two black teenagers (asking them what they were doing in Torrance, a predominantly white city of Los Angeles metro area) compared to the nature of the questionable traffic stop:

> [R]acial bias was an obvious and appropriate subject to explore given the nature of the case. In closing arguments, it was appropriate for the plaintiffs' counsel to tell the jury it could infer racial bias from all of the circumstances. The first such circumstance was the fact that when the officers first decided to make a U-turn and follow the plaintiffs' car, all they had seen were two young African American males driving down a major boulevard in an unremarkable manner. The next circumstance it was appropriate to ask the jury to consider was the questions directed by Officer Kramer to the white teen, Nicholas Cramer. The officer asked Cramer whether he knew the two black teens, whether they were actually his friends, and how long he had known them. No comparable questions were asked of the black plaintiffs. Instead, Kramer asked Price and Mason, the two African American teens "What are you doing out here?" The officer also told Mason "You're not supposed to be here." In leaving, the officers' last words to the boys were, "Get the hell out of here." The plaintiffs' counsel appropriately introduced testimony to prove these facts and, on that basis, appropriately urged the jury to draw the inference that the officers had acted on racial bias.

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 9
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*Id.* at 1251.

The facts of the present case similarly support the inference, sufficient to survive summary judgment, that VanGesen targeted Taylor believing that he, a black man, did not actually know anyone in the largely white neighborhood he was in, and had no legitimate reason to be in the area.  On these facts, Mr. Taylor's Fourteenth Amendment claim survives VanGesen's motion to dismiss.

## V.      CONCLUSION

For the reasons stated herein, Plaintiff Omari Taylor respectfully requests that this Court reconsider and reverse its January 20, 2021 order granting summary judgment dismissal of Taylor's Fourteenth Amendment Equal Protection claim.

DATED this 3rd day of February, 2021.

*s/ Randolph J. Johnson*
James E. Lobsenz WSBA #8787
Randolph J. Johnson WSBA #50129
Attorneys for Plaintiff
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone:  (206) 622-8020
lobsenz@carneylaw.com
johnson@carneylaw.com

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 10
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx

1

## CERTIFICATE OF SERVICE

2

     I hereby certify that on this 3rd day of February, 2021, I electronically filed the

3

foregoing **PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT DISMISSAL OF FOURTEENTH AMENDMENT CLAIM** with the Clerk of the Court

4

using the CM/ECF system which will send notification of such filing to the following:

5

**Attorneys for Defendants**
Ione S. George

6

John C. Purves
KITSAP COUNTY PROSECUTOR'S OFFICE

7

614 Division St MS-35A
Port Orchard WA  98366-4676

8

igeorge@co.kitsap.wa.us

9

jcpurves@co.kitsap.wa.us

10

DATED this 3rd day of February, 2021.

11

12

                         *s/ Deborah A. Groth*

13

                        Legal Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING SUMMARY JUDGMENT DISMISSAL OF
FOURTEENTH AMENDMENT CLAIM – 11
(3:18-cv-05682-BHS)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

TAY027-0001 6479054.docx