UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OMARI TAYLOR,

                          Plaintiff,

        v.

JON VANGESEN, KITSAP COUNTY,

                          Defendants.

CASE NO. C18-5682 BHS

ORDER GRANTING PLAINTIFF'S
MOTION FOR
RECONSIDERATION

        This matter comes before the Court on Plaintiff Omari Taylor's motion for

reconsideration. Dkt. 73. The Court has considered the pleadings filed in support of and

in opposition to the motion and the remainder of the file and hereby grants the motion for

the reasons stated herein.

## I.    FACTUAL & PROCEDURAL BACKGROUND

        The Court reincorporates by reference the relevant factual and procedural

background found in the underlying order. *See* Dkt. 72. On January 20, 2021, the Court

granted in part and denied in part Defendant Jon VanGesen's motion for summary

judgment. *Id.* The Court interpreted Taylor's Fourteenth Amendment claim to be a

1   selective prosecution or enforcement claim and concluded that there were no genuine

2   issues of fact as to whether VanGesen violated the Equal Protection Clause. *Id.* at 7–13.

3         On February 3, 2021, Taylor filed a timely motion for reconsideration. Dkt. 73.

4   The Court requested that VanGesen respond, Dkt. 74, and on February 16, 2021,

5   VanGesen responded, Dkt. 75. On February 19, 2021, Taylor replied. Dkt. 76.

6         Taylor argues that the Court erred in partially granting summary judgment because

7   he is not bringing a selective enforcement claim and because there is sufficient evidence

8   for a jury to find that VanGesen's actions were racially motivated.

9                          **II.   DISCUSSION**

10        Motions for reconsideration are governed by Local Rule 7(h), which provides as

11   follows:

12        Motions for reconsideration are disfavored. The court will ordinarily deny
         such motions in the absence of a showing of manifest error in the prior
13        ruling or a showing of new facts or legal authority which could not have
         been brought to its attention earlier with reasonable diligence.
14
15   Local Rules W.D. Wash. LCR 7(h). "[A] motion for reconsideration should not be

16   granted, absent highly unusual circumstances, unless the district court is presented with

17   newly discovered evidence, committed clear error, or if there is an intervening change in

18   the controlling law." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.

19   2000) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

20   Mere disagreement with a previous order is an insufficient basis for reconsideration, and

21   reconsideration may not be based on evidence and legal arguments that could have been

22

1  presented at the time of the challenged decision. *Haw. Stevedores, Inc. v. HT & T Co.*,

2  363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).

3        Taylor argues that the Court erroneously construed his equal protection claim as a

4  selective enforcement claim. The Court did, in fact, interpret Taylor's Fourteenth

5  Amendment claim to be a selective enforcement claim. Dkt. 72 at 7 (citing *United States*

6  *v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018)). Taylor now clarifies that he not asserting

7  selective enforcement of the vehicle equipment law, but rather that he is asserting a claim

8  based on "pretextual enforcement of the law." Dkt. 73 at 4.

9        A selective enforcement claim challenges the actions of state officers in

10  determining against whom to enforce the law. *See Lacey v. Maricopa Cnty.*, 693 F.3d

11  896, 920 (9th Cir. 2012). If Taylor were to bring a selective enforcement claim, his

12  argument would be that VanGesen observed Taylor's broken taillight, saw Taylor is

13  black, and then chose to pull Taylor over because of his race as opposed to other drivers

14  who VanGesen feasibly also observed driving with a broken taillight at that time. But that

15  is not Taylor's theory for his equal protection clause claim: he instead asserts that

16  VanGesen never saw his broken taillight before the stop and that VanGesen only pulled

17  him over because Taylor is black and because he believed Taylor was in the area to sell

18  drugs. Dkt. 73 at 4; *cf. U.S. v. Mesa-Roche*, 288 F. Supp. 2d 1172, 1184 (D. Kan. 2003)

19  (selective enforcement claim based on a deputy's repeated alleged use of Hispanic

20  ethnicity as a basis to stop drivers). The Court agrees with Taylor that interpreting his

21  claim as a selective enforcement claim was manifest error and will reconsider the original

22  order.

1   "The Equal Protection Clause of the Fourteenth Amendment commands that no

2   State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

3   which is essentially a direction that all persons similarly situated should be treated alike."

4   *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted).

5   To state a claim for violation of the Equal Protection Clause, a plaintiff must show that

6   the defendant "acted in a discriminatory manner and that the discrimination was

7   intentional."[1] *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000)

8   "Intentional discrimination means that a defendant acted at least in part *because of* a

9   plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.

10  1994) (emphasis in original) (citation omitted).

11       To survive summary judgment, a plaintiff "must produce evidence sufficient to

12  permit a reasonable trier of fact to find by a preponderance of the evidence that the

13  decision was racially motivated." *Bingham v. City of Manhattan Beach*, 341 F.3d 939,

14  949 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & Cnty. of San*

15  *Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010). However, evidence that the plaintiff

16

17       ───────────────

18       [1] Taylor's response to the summary judgment motion argued that "[t]he parties agree that to prevail, Mr. Taylor must demonstrate that VanGesen acted with an intent or purpose to discriminate against him based upon his race; and that VanGesen's actions had a discriminatory

19  effect." Dkt. 65 at 17 (citations omitted). Based on the Court's own research, "acting in a discriminatory manner" and "discriminatory effect" are similar concepts. *Compare Reese*, 208

20  F.3d at 740 (noting that there was no "evidence of system-wide disparate impact in punishments between genders" to establish the school district acted in a discriminatory manner) *with Lacey*,

21  693 F.3d at 920 (discriminatory effect in a selective enforcement case requires a showing that similarly situated individuals were not prosecuted). Both equal protection standards require a showing that the state actor's actions actually had a discriminatory impact, not just that the actor

22  intended to discriminate.

1 and the defendant are of a different race, combined with a disagreement as to the

2 reasonableness of the defendant's conduct toward the plaintiff, is insufficient to show a

3 violation of the Equal Protection Clause. *Id.*

4      The Court previously concluded that *Bingham* controls here and that Taylor's

5 evidence is nearly identical to the evidence in *Bingham* that the Ninth Circuit held is

6 insufficient to establish discriminatory purpose or intent. Dkt. 72 at 10–11. Taylor argues

7 that the Court overlooked evidence sufficient for a jury to find that VanGesen's acts were

8 racially motivated. He asserts that VanGesen "almost immediately became 'aggressively

9 inquisitive'" in asking what Taylor was doing in the neighborhood and where he lived.

10 Dkt. 73 at 8. Taylor argues that this evidence, in addition to his race and the

11 demographics of the surrounding area, is strong circumstantial evidence to support the

12 inference that VanGesen's actions were racially motivated and violative of his Fourteenth

13 Amendment rights.

14      Taylor also cites *Price v. Kramer*, 200 F.3d 1237 (9th Cir. 2000), in support of his

15 argument that VanGesen's questioning into why he was in the area reflects racial

16 motivation. In *Price*, police officers observed two young black men driving down a major

17 boulevard and, though the young men were driving "in an unremarkable manner[,]"

18 pulled them over. *Id.* at 1251. One of the officers asked the white passenger if he knew

19 the two black teens, whether they were actually his friends, and how long he had known

20 them. *Id.* The officer did not ask comparable questions to the young black men but did

21 ask "What are you doing out here?" and told them "You're not supposed to be here." and

22 "Get the hell out of here." *Id.* The Ninth Circuit concluded that the inquiry into the

1  officer's questioning was relevant at trial to establish an inference that the officers had

2  acted on racial bias. *Id.*

3      The Court agrees with Taylor that VanGesen's line of questioning about where

4  Taylor lived and what he was doing in the area and the reasonable inferences therefrom

5  tend to support Taylor's conclusion that VanGesen acted with racial motivation. *See*

6  *Bingham*, 341 F.3d at 953–54 (Reinhardt, J., concurring in part). This circumstantial

7  evidence is more than what was contemplated by Ninth Circuit in *Bingham*: the record is

8  not "devoid of any evidence" that race motivated VanGesen's stop of Taylor. *Cf. id.* at

9  948 (majority opinion). A reasonable factfinder could find that the line of questioning

10  about why Taylor, a black man, was in a predominately white area is circumstantial

11  evidence of racial motivation.

12      Additionally, the Court previously concluded that Taylor had to establish

13  discriminatory effect and "show that similarly situated individuals who were not black

14  were not subject to being stopped and cited during daylight hours for a broken taillight."

15  Dkt. 72 at 11 (citation omitted). But the standard the Court applied was the "demanding"

16  standard of proving discriminatory effect for a selective enforcement claim. *See Lacey*,

17  693 F.3d at 920 (citing and quoting *United States v. Armstrong*, 517 U.S. 456, 463

18  (1996)). As discussed above, Taylor is not bringing a selective enforcement claim; to

19  hold Taylor to the "demanding" standard in proving discriminatory effect was manifest

20  error.

21      The Kitsap County Sheriff's Office ("KCSO") infraction records support the

22  conclusion that VanGesen acted in a discriminatory manner. The Court noted that the

1    "KCSO records provided show that Taylor was the only driver who was stopped during

2    daylight hours for a violation of RCW 46.37.050, which may support an inference that

3    similarly situated white drivers were not subject to the offensive conduct here." Dkt. 72 at

4    12. Applying the "demanding" selective enforcement standard, the Court concluded that

5    this was insufficient evidence. *Id.* at 12–13. But, upon reconsideration and application of

6    the "discriminatory manner" standard, the evidence is sufficient to survive summary

7    judgment.

8        Taylor argues that VanGesen could not have possibly seen his defective taillight

9    before effecting the stop, and this evidence—in conjunction with the KSCO records—

10   supports the conclusion that VanGesen acted in a discriminatory manner. The Court

11   previously concluded that it was a question of fact as to whether VanGesen did in fact see

12   the defective taillight prior to effectuating the stop. *See* Dkt. 72 at 13–14. Taylor further

13   asserts that white drivers were arguably driving through Kitsap County with undetectable

14   taillight defects but that these white drivers were not stopped because the particular

15   infraction is not easily visible during daylight hours. Dkt. 76 at 4. Thus, viewing the

16   evidence in the light most favorable to Taylor, a juror could conclude that VanGesen did

17   not see the broken taillight, only stopped Taylor because of his race, and acted in a

18   discriminatory manner.

19       In conclusion, the Court committed manifest error in interpreting Taylor's equal

20   protection claim as a selective enforcement claim. Upon reconsideration, Taylor has

21   presented sufficient evidence to establish at this stage that VanGesen acted in a

22   discriminatory manner and was racially motivated when he stopped Taylor. The Court

previously granted summary judgment as to Taylor's equal protection claim and now

reverses that decision. Summary judgment is denied as to this claim.[2]

### III.  ORDER

Therefore, it is hereby **ORDERED** that Taylor's motion for reconsideration, Dkt.

73, is **GRANTED**. VanGesen's motion for summary judgment, Dkt. 61, on Taylor's

equal protection clause claim is **DENIED**.

Dated this 25th day of March, 2021.

_____
BENJAMIN H. SETTLE
United States District Judge

---

[2] A finding of qualified immunity is also precluded for Taylor's equal protection claim because Taylor has established a constitutional violation at this stage, and the right to not be stopped by police based only on race under the Fourteenth Amendment was clearly established by 1992. *See, e.g.*, *Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 542 (6th Cir. 2002).